WISCONSIN PROFESSIONAL POLICE ASSOCIATION (WPPA) as successor to Teamsters Union Local 695, Petitioner-Respondent,

v.

COUNTY OF DANE, Respondent,

William H. FERRIS, Appellant.

Supreme Court

*No. 81-023. Argued November 3, 1981.—Decided March 2, 1982.*

(Also reported in 316 N.W.2d 656.)

For the appellant there were briefs by *Robert M. Hesslink, Jr., Anthony R. Varda* and *DeWitt, Sundby, Huggett & Schumacher, S.C.,* of Madison, and oral argument by *Mr. Hesslink.*

For the petitioner-respondent there was a brief by *Richard V. Graylow* and *Lawton & Cates* of Madison, and oral argument by *Mr. Graylow*.

DAY, J. This case is before us by grant of a joint petition to bypass the court of appeals made on behalf of appellant William H. Ferris and petitioner-respondent Wisconsin Professional Police Association, from an order of the Circuit Court for Dane County, HON. P. CHARLES JONES, Circuit Judge.

The issue is whether the sheriff is limited in his selection of a "court officer" by a collective bargaining agreement entered into between a union representing the non-supervisory deputies on the sheriff's staff and Dane county operating through the county board.

We conclude that under the Wisconsin constitution the sheriff has the power and prerogatives which that office had under the common law, among which were a very special relationship with the courts. These powers may not be limited by a collective bargaining agreement entered into by the county and a labor union representing deputy sheriffs. However, we cannot determine from the record before this court whether the duties performed by the "court officer" fall within the sheriff's common law powers in relation to the courts. We therefore reverse the order of the trial court which ordered the sheriff to comply with an arbitrator's award enforcing the collective bargaining agreement and remand the case to the trial court for a determination of the duties of the "court officer" and whether those duties fall within the constitutional powers of the sheriff.

The history of this litigation is as follows: On December 19, 1976, Dane county and Teamsters Union Local 695,[1] representing the nonsupervisory deputy sheriffs

---

[1] The Teamsters were succeeded as bargaining agents by the Wisconsin Professional Policeman's Association, (WPPA), the

of Dane county, entered into a collective bargaining agreement. The agreement provided that "bargaining unit work" could be assigned only to members of the union. On January 15, 1979, Dane County Sheriff William H. Ferris (hereinafter "sheriff") appointed a deputy sheriff who was a member of the supervisory, rather than the nonsupervisory bargaining unit as court officer. These duties had previously been performed by a member of the nonsupervisory bargaining unit. The union filed a grievance, and arbitration proceedings were conducted between the union and Dane county. On December 19, 1979, the arbitrator issued an award directing that the court officer work be returned to a member of the nonsupervisory bargaining unit. This award was confirmed by Dane County Circuit Judge P. Charles Jones in an order dated March 19, 1980.

The sheriff did not participate in any of the aforementioned proceedings and refused to accept service of the above order, stating the following reasons:

"(1) The order is not addressed to me in my capacity or name as sheriff of Dane County;
"(2) I am not signatory to any union contract;
"(3) The County cannot direct me in the management of the office."

The union instigated contempt of court proceedings, and moved for an order that the sheriff be held in contempt of court for failure to comply with the March 19, 1980, order confirming the arbitration award.

The motion was heard by Judge Jones on April 22, 1980. The sheriff appeared at this hearing. On December 1, 1980, Judge Jones ordered the sheriff to comply with the March 19, 1980, order or be held in contempt

petitioner-respondent in this action. Both the WPPA and the Teamsters will be referred to throughout this opinion as the "union."

of court. The sheriff appealed to the court of appeals. Both parties petitioned this court for leave to bypass the court of appeals, which was granted.

We note at the outset that the sheriff has not been held in contempt of court, but that the December 1980, order which is the basis for this appeal states that he will be held in contempt of court pursuant to sec. 785.01 (1) (b), Stats. 1979–80,[2] if he does not comply with the March 19, 1980, order. Accordingly he is not barred from challenging the order whose violation would subject him to a contempt citation.[3]

The law governing review of arbitration awards was summarized in *Milwaukee Bd. Sch. Dirs. v. Milwaukee Teacher's Ed. Asso.*, 93 Wis. 2d 415, 422, 287 N.W.2d 131 (1980) as follows:

"This court has held that an arbitrator's award is presumptively valid, and it will be disturbed only where invalidity is shown by clear and convincing evidence. *Stradinger v. City of Whitewater,* 89 Wis. 2d 19, 37, 277 N.W.2d 827 (1979); *Sherrer Constr. Co. v. Burlington Mem. Hosp.,* 64 Wis. 2d 720, 735, 221 N.W.2d 855 (1974). This court has also stated that it has a 'hands

---

[2] "785.01 **Definitions.** (1) 'Contempt of court' means intentional:

. . .

"(b) Disobedience, resistance or obstruction of the authority, process or order of a court; . . ."

Sheriff Ferris died while this action was pending before this Court. At Oral Argument, counsel for both parties informed the Court that they had agreed that his successor, Sheriff Jerome Lacke, be substituted for Sheriff Ferris. Counsel for the sheriff also informed us that Sheriff Lacke did not intend to comply with the March 19, 1980, order confirming the arbitrator's award and so was also subject to being held in contempt of court.

[3] See *Anderson v. Anderson,* 82 Wis. 2d 115, 118–119, 261 N.W. 2d 817 (1978), and *Getka v. Lader,* 71 Wis. 2d 237, 247, 238 N.W. 2d 87 (1976), for statements of the general rule that the fact that a court order is clearly erroneous does not preclude being held in contempt for violation of the order.

off' attitude toward arbitrator's decisions. *Glendale Prof. Policemen's Asso. v. Glendale,* 83 Wis. 2d 90, 98, 264 N.W.2d 594 (1978); *Jt. School Dist. No. 10 v. Jefferson Ed. Asso.,* 78 Wis. 2d 94, 117, 253 N.W.2d 536 (1977); *WERC v. Teamsters Local No. 563,* 75 Wis. 2d 602, 611, 250 N.W.2d 696 (1977). This court has said that:

"Judicial review of arbitration awards is very limited. The strong policy favoring arbitration as a method for settling disputes under collective bargaining agreements requires a reluctance on the part of the courts to interfere with an arbitrator's award upon issues properly submitted. . . .

" 'Thus, the function of the court upon review of an arbitration award is a supervisory one, the goal being merely to ensure that the parties receive the arbitration that they bargained for. . . '." *Milw. Pro. Firefighters Local 215 v. Milwaukee,* 78 Wis. 2d 1, 21, 22, 253 N.W.2d 481 (1977).

"The decision of an arbitrator will not be interfered with for mere errors of judgment as to law or fact, but the court will overturn an arbitrator's award if there is perverse misconstruction or positive misconduct plainly established, or if there is a manifest disregard of the law, or if the award itself is illegal or violates strong public policy."

In *Glendale Prof. Policemen's Asso.,* 83 Wis. 2d at 98, this court declared that, although it has adopted a "hands-off" attitude toward arbitration awards, it would vacate an award where the arbitrator has exceeded his authority, stating:

"An arbitrator exceeds his authority in enforcing an illegal contract. . . . Because a contract provision that violates the law is void, a dispute arising out of a violation of that provision is not arbitrable."

The sheriff argues that the arbitrator's award is illegal and void because it orders him to comply with a provision of a collective bargaining contract entered into between the union and Dane county that infringes upon his powers as sheriff.

The office of sheriff is one of the most ancient and important in Anglo-American Jurisprudence. Its origins pre-date the Magna Carta. Walter H. Anderson, in *A Treatise On The Law of Sheriffs, Coroners And Constables*, describes the sheriff's common law authority as follows:

"In the exercise of executive and administrative functions, in conserving the public peace, in vindicating the law, and in preserving the rights of the government, he (the sheriff) represents the sovereignty of the State and *he has no superior in his county.*" (Emphasis added.) [4]

This comports with the role of the office as described by Blackstone:

"As the keeper of the king's peace, both by common law and special commission, he is the first man in the county, and superior in rank to any nobleman therein, during his office." [5]

The position of sheriff is provided for in the Wisconsin Constitution, Article VI, section 4, which provides, in part:

"Sheriffs . . . shall be chosen by the electors of the respective counties once in every two years . . . Sheriffs shall hold no other office; they may be required by law to renew their security from time to time, and in default of giving such new security their office shall be deemed vacant, but the county shall never be made responsible for the acts of the sheriff. The governor may remove any [sheriff] . . . . giving to [him] . . . a copy of the charges against him and an opportunity of being heard in his defense. All vacancies shall be filled by appointment and the person appointed to fill a vacancy shall hold only for the unexpired portion of the term to which he shall be appointed and until his successor shall be elected and qualified."

[4] 1 W. Anderson, *A Treatise on the Law of Sheriffs, Coroners and Constables*, sec. 6, p. 5 (1940).

[5] 1 W. Blackstone, *Commentaries on the Law of England*, 4th ed., (Clarendon Press, Oxford, England, 1770), p. 343.

While the sheriff's powers are not delineated in the constitution, this court early set forth its interpretation of the scope of the sheriff's constitutional powers in *State ex rel. Kennedy v. Brunst*, 26 Wis. 412 (1870), in which the court declared unconstitutional a statute transferring "exclusive charge and custody" of the Milwaukee county jail from the sheriff to the inspector of the house of correction. The court discussed the constitutional powers of the sheriff as follows:

"The office of sheriff, in a certain sense, is a constitutional office; that is, the constitution provides that sheriffs shall be chosen by the electors of the respective counties, once in every two years and as often as vacancies shall happen. Sec. 4, art 6. Now, it is quite true that the constitution nowhere defines what powers, rights and duties shall attach or belong to the office of sheriff. But there can be no doubt that the framers of the constitution had reference to the office with those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted. Among those duties, one of the most characteristic and well acknowledged was the custody of the common jail and of the prisoners therein. This is apparent from the statutes and authorities cited by the counsel for the respondent. And it seems to us unreasonable to hold, under a constitution which carefully provides for the election of sheriffs, fixes the term of the office, etc., that the legislature may detach from the office its duties and functions, and transfer those duties to another officer. In this case it is said that the legislature has attempted to take the largest share of the duties of sheriff, in point of responsibility and emolument, and to commit it to an officer selected by the county board of supervisors. If the legislature can do this, why may it not deprive the sheriff of *all* the duties and powers appertaining to his office, and transfer them to some officer not chosen by the electors? It would certainly be a very idle provision of the constitution, to secure to the electors the right to choose their sheriffs, and at the same time leave to the legislature the power to detach from the office of sheriff all the

duties and functions by law belonging to that office when the constitution was adopted, and commit those duties to some officer not elected by the people. For this would be to secure to the electors the right to choose a sheriff in name merely, while all the duties and substance of the office might be exercised by and belong to an officer appointed by some other authority. We therefore conclude that it was not competent for the legislature to take from the constitutional office of sheriff a part of the office itself, and transfer it to an officer appointed in a different manner, and holding the office by a different tenure from that which was provided for in the constitution." *State ex rel. Kennedy,* 26 Wis. at 414–15.

The scope of the sheriff's constitutional powers were further defined in *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 177 N.W. 781 (1920), wherein this court held that a statute providing for civil service appointment of sheriff's deputies was not an unconstitutional infringement of the sheriff's authority. The decision declared:

"It is contended by appellant that the so-called civil service law is unconstitutional in so far as it applies to the office of sheriff of any county. It is said that at common law the sheriff had power to appoint deputies and it is not competent for the legislature to detract materially from the powers, duties, and liabilities of the sheriff, and reference is made to the case of *State ex rel. Kennedy v. Brunst,* 26 Wis. 412. . . . We think [Brunst] should be confined to those immemorial principal and important duties that characterized and distinguished the office. While at common law the sheriff possessed the power to appoint deputies, it was not a power or authority that gave character and distinction to the office. Many other officers as well as sheriffs possessed the power. It was more in the nature of a general power possessed by all officers to a more or less extent and was not peculiar to the office of sheriff. It should not be held, in our judgment, that the constitution prohibits any legislative change in the powers, duties, functions, and liabilities of a sheriff as they existed at common law. If that were true, a constitutional amendment

would be necessary in order to change the duties of sheriffs in the slightest degree and, in this respect, 'the state would be stretched on a bed of Procrustes.' " *Buech, supra,* 171 Wis. at 481–482.

The trial court in the case before us concluded that the assignment of deputies to particular jobs is not " 'peculiar to' nor gives 'character and distinction to' the office of sheriff." Therefore the constitution did not preclude Dane county from bargaining this matter with the union representing the deputy sheriffs. However, the trial court over-generalized the issue. The real question is whether the duties performed by the "court officer" are among the principal and important duties which characterized the office of sheriff so that the sheriff may not be restricted as to whom he appoints to perform the functions. It is the nature of the job assigned rather than the general power of job assignment which must be analyzed in light of the sheriff's constitutional powers.

Blackstone points out that the duties of the sheriff in relation to the courts include:

"Bailiffs, or sheriff's officers, . . . attend the judges and justices at the assises, and quarter sessions . . ."[6]

Anderson says:

"It is one of the many duties of the sheriff to attend sessions of particular courts. It is sufficient for the sheriff to fulfill the duty . . . by a qualified deputy . . . . when the sheriff attends the court he attends as an officer of the court. . . . .

"It is the duty of the sheriff to be present himself, or through a deputy and provide sufficient deputies to carry out the Court's orders."

"It is likewise the duty of the sheriff not only to see peace and quiet are maintained in the court but also to see that his deputies, constables, and other officers in the

---

[6] *Id.,* at 345.

court perform the duties assigned to them. The sheriff is the immediate officer of the court and should see that all of its orders in its behalf are properly carried out and obeyed. . . ."[7]

"[The sheriff] . . . appoints court officers although subject to the approval of the court. The court cannot interfere with the sheriff's discretion in appointing bailiffs or reduce the number provided by statute, but the sheriff is liable for contempt in appointing persons offensive to the court's order and decorum under pretense of exercising his statutory discretion and the court may enforce the exclusion of such appointees from its presence."[8]

"Attendance on the Court" is in the same category of powers inherent in the sheriff as is running the jail. Just as this court held in *State ex rel. Kennedy v. Brunst,* 26 Wis. at 415, that the legislature cannot deprive the sheriff of control of the jail, neither can the legislature through a statute authorizing collective bargaining by the county board and a union deprive the sheriff of his authority to select who among his deputies shall act in his stead in attendance on the court.

Counsel for the union in oral argument before this court stated that under the collective bargaining agreement, the sheriff himself could not "attend" the court unless a member of the union accompanied him. This interpretation would substantially limit the sheriff's ability to perform his official duties as he sees fit, forcing him to either forbear personally performing one of his functions or be accused of "featherbedding" by taking along an unneeded deputy. Such a restriction is inconsistent with the traditional nature of this office, as stated by this court in *Andreski v. Industrial Comm.,* 261 Wis. 234, 240, 52 N.W.2d 135 (1952) :

---

[7] 1 Anderson, *supra*, at secs. 325, 327, pp. 320, 321.

[8] Id., at sec. 65, p. 59.

"Within the field of his responsibility for the maintenance of law and order the sheriff today retains his ancient character and is accountable only to the sovereign, the voters of his county, though he may be removed by the governor for cause. No other county official supervises his work or can require a report or an accounting from him concerning his performance of his duty. He chooses his own ways and means of performing it. He divides his time according to his own judgment of what is necessary and desirable but is always subject to call and is eternally charged with maintaining the peace of the county and the apprehension of those who break it. In the performance of this duty he is detective and patrolman, as well as executive and administrator, and he is emphatically one of those who may serve though they only stand and wait. We recite these qualities and characteristics of the office not because they are novel but because they are so old that they are easily forgotten or unappreciated."

From a review of the above authorities, we conclude that attending on the courts is one of the duties preserved for the sheriff by the Wisconsin constitution. We are unable, however, to determine whether the "court officer" position at issue here falls within the above-mentioned powers of the sheriff.

The record in this case is meager as to the function of the court officer. The collective bargaining agreement is not part of the record. Whether or not the duties of the "court officer" are described therein or from what deputies the sheriff is supposed to choose is not shown. There is no transcript of the hearing before the arbitrator and so anything said there about the functions of the court officer is not available to us. The arbitrator's decision, which is part of the record, describes the duties of the "court officer" as follows:

"Prior to January, 1979, one of the positions in the Sheriff's Department was that of court officer. Classified as deputy sheriff II, the court officer monitored the arrest reports of other deputies, made certain that work

of the Sheriff's Department was completed in cases where probable cause for prosecution appeared, and assisted in extradition proceedings and other matters within the jurisdiction of the office of the district attorney."

Neither party argued that the above is a complete description of the court officer's duties. Counsel for the sheriff argued in its brief that "[t]he delegated authority at issue here is that of attending on court," citing sec. 59.23(3), Stats. 1979–80.[9]

"59.23 **Sheriff; duties** . . . (3) Attend upon the circuit court held in the sheriff's county during its session, and at the request of the court file with the clerk thereof a list of deputies for attendance on the court. . . ."

During oral argument before this court, and in response to questions from the bench, counsel for the union also treated the court officer position as involving "attendance" on the court. If the court officer performs the functions set forth in sec. 59.23(3) or is required to represent the sheriff in court, such matters are reserved to the sheriff by the Wisconsin constitution and therefore the county may not limit the sheriff's discretion by a provision in a collective bargaining agreement. What the facts are with respect to the court officer's duties are to be resolved by the trial court.

If the functions of the court officer are not reserved to the sheriff by the constitution, then the sheriff may be bound by the collective bargaining agreement entered into between the county and the union by virtue of the Municipal Employment Relations Act (MERA), secs. 111.70–77, Stats 1979–80.[10]

---

[9] Sheriff's reply brief at page 4.

[10] The portions of MERA relevant to this action are sec. 111.70(1)(a), (d) and (3), Stats:

"111.70 **Municipal employment.** (1) DEFINITIONS. As used in this subchapter:

"(a) 'Municipal employer' means any city, county, village, town metropolitan sewerage district, school district, or any other

MERA imposed upon Dane county an obligation to collectively bargain with its public employees unions. The county board has the power to bargain on behalf of the county by virtue of sec. 59.07 (intro.) and (5), Stats. 1979–80:

"59.07 **General powers of board.** The board of each county may exercise the following powers, which shall be broadly and liberally construed and limited only by express language. . . .

"(5) GENERAL AUTHORITY. Represent the county, have the management of the business and concerns of the county in all cases where no other provision is made, apportion and levy taxes and appropriate money to carry into effect any of its powers and duties."

While the agreement achieved as the result of this bargaining may not violate the law, *WERC v. Teamsters Local 563,* 75 Wis. 2d 602, 613, 250 N.W.2d 696 (1977), the contract and related statutes should be harmonized

---

political subdivision of the state which engages the services of an employe and includes any person acting on behalf of a municipal employer within the scope of his authority, express or implied. . . .

"(d) 'Collective bargaining' means the performance of the mutual obligation of a municipal employer, through its officers and agents, and the representatives of its employes, to meet and confer at reasonable times, in good faith, with respect to wages, hours and conditions of employment with the intention of reaching an agreement, or to resolve questions arising under such an agreement. . . .

"(3) PROHIBITED PRACTICES AND THEIR PREVENTION. (a) It is a prohibited practice for a municipal employer individually or in concert with others: . . . . 5 To violate any collective bargaining agreement previously agreed upon by the parties with respect to wages, hours, and conditions of employment affecting municipal employes, including an agreement to arbitrate questions arising as to the meaning or application of the terms of a collective bargaining agreement or to accept the terms of such arbitration award, where previously the parties have agreed to accept such award as final and binding upon them."

whenever possible, *Glendale Prof. Policemen's Assoc. v. Glendale,* 83 Wis. 2d 90, 103–104, 264 N.W.2d 594 (1978).

The sheriff argues that sec. 59.23(3), Stats., accords him statutory powers which may not be limited by a collective bargaining agreement. Section 59.23(3) codifies the sheriff's constitutional duty to attend on the court. Accordingly, the statutory authorization adds nothing to his constitutional powers discussed above. If the court officer does perform the functions set forth in sec. 59.23(3), the collective bargaining agreement may not limit the sheriff's discretion in assigning a deputy to that position. However, were it not for the constitutional basis for the statutory authorization, then the statute would be no bar to enforcement of the collective bargaining agreement even though they arguably conflict. The statute appears to confer unlimited discretion on the sheriff to appoint the court officer while the collective bargaining agreement limits the selection of the deputy who may be so appointed to members of a particular bargaining unit. Although the county board may not bind the sheriff to a collective bargaining provision which explicitly contradicts his constitutional or statutory powers and duties, a provision which can be reasonably interpreted to not conflict with the sheriff's statutory powers should be given effect.

This court dealt with a similar situation in *Glendale Prof. Policemen's Asso.,* 83 Wis. 2d 90, in which the Glendale chief of police argued that a collective bargaining provision that any vacancy must be filled by promotion of the most-senior-qualified employee was void because it limited the police chief's powers set forth in sec. 62.13(4)(a), Stats. 1975.[11] This court, applying

[11] "62.13 **Police and fire departments.** . . . (4) SUBORDINATES: REEMPLOYMENT. (a) The chiefs shall appoint subordinates sub-

the rule that the collective bargaining agreement and the statute should be harmonized if possible, held that the agreement was not incompatible with the statute since it did not require the chief to appoint an unqualified person, and the seniority requirement would only come into effect if there were more than one qualified candidate for promotion. The court recognized that in entering into the collective bargaining agreement, the city limited some of the discretion which the chief might otherwise have, but that narrowing, as opposed to totally removing, the chief's discretion was compatible with the statute.

"Although by entering into the collective bargaining agreement the City relinquished some of the discretion the Chief and the Board enjoyed previously concerning appointments and promotions, it has not transferred from the Chief or the Board the authority to determine who is qualified, and it has not transferred away the appointing authority.

"Our construction gives effect to both the Chief's power under sec. 62.13(4)(a) and the municipality's duty to bargain under sec. 111.70, Stats. Sec. 62.13(4)(a) is enabling legislation which places the exercise of discretion in a certain office, while sec. 111.70 permits the City to limit the scope of this discretion through a collective bargaining agreement. The Common Council has not, as the City contends, bargained away a power possessed by the Chief that is not the City's to bargain. In ratifying the agreement, the Council has effectuated the municipal employer's statutory duty to bargain on conditions of employment and has preserved the statutory requirement that only qualified persons be appointed." *Glendale Prof. Policemen's Asso.*, 83 Wis. 2d at 107.

Again, however, *Glendale* is inapplicable to the extent that the sheriff's authority is based upon his constitu-

---

ject to approval by the board. Such appointments shall be made by promotion when this can be done with advantage, otherwise from an eligible list provided by examination and approval by the board and kept on file with the clerk."

tional rather than merely statutory powers. While MERA permits a collective bargaining agreement to limit the sheriff's statutory powers to the extent set forth in *Glendale*, it provides no basis for so limiting the powers and duties of the sheriff which are based upon his constitutional status.

We, therefore, remand this case to the trial court for a determination of the duties of the court officer and whether those duties are among those preserved to the sheriff by the Wisconsin constitution. If they are, then the arbitrator's award is invalid and the sheriff is not bound by it. If not, then the sheriff is bound by the collective bargaining agreement and the court may order him to comply with it.

*By the Court.*—The order of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The dispute in the case at bar focuses on what duties of the Office of Sheriff are so crucial and peculiar to the maintenance of the constitutional role of that office that the duties cannot be regulated by the legislature or by the county through power delegated to it by the legislature.

Although the court officer may perform tasks which are peculiar to and characteristic of the Office of Sheriff, I dissent because I conclude, as did Circuit Judge P. Charles Jones, that the *assignment* of a deputy to act as a court officer is not a duty peculiar to and characteristic of the Office of Sheriff. Judge Jones concluded that the sheriff's appointment of the court officer can be regulated by the legislature, reasoning as follows:

"Taken together, these decisions [*Brunst, supra* and *Buech, supra*] establish that 'important' duties, functions and powers 'generally recognized . . . [as] belonging to

[the sheriff] . . . when the constitution was adopted,' which are 'peculiar to' and give 'character and distinction to the office' of Sheriff, repose exclusively in the Sheriff and may not be exercised by, nor delegated to, any other official or body.

"I believe that under this test, work assignment labor relations issues are not relegated by Art. VI, Sec. 4 solely to the authority of Sheriffs. The legislature is thus free to allocate power to bargain on these issues between Sheriffs and Counties as it sees fit.

"While internal management of the Sheriff's Department is doubtless 'important', and quite possibly a power generally recognized as 'belonging to the Sheriff when the Constitution was adopted,' I believe it neither is 'peculiar to' nor gives 'character and distinction to' the office of Sheriff. Under the reasoning in *Buech, supra,* numerous other officials, both elected and appointed, are responsible for the internal management of their offices. Indeed, to require a constitutional amendment for every change in Sheriff's Department internal management would be to stretch the state 'on a bed of Procrustes.' *Buech, supra* at 482.

"Thus, Art. VI, Sec. 4, *Wis. Const.,* does not restrain the legislature from rendering Sheriffs agents of counties for purposes of collective bargaining regarding deputies' work assignments." Memorandum decision of the Circuit Court at 7–8.

The majority holds that more facts are needed to determine the functions of the court officer. I conclude that regardless of whether the court officer "attends upon the court" or represents the sheriff in court, the assignment of a deputy as a court officer can be reasonably regulated. While the duties performed by a court officer may be part of the constitutional duties of the Office of Sheriff (as is the operation of a jail), the assignment of the deputy to act as court officer may be regulated by the legislature (as is the assignment of a deputy to work in the jail).

Although there is an important relationship between the circuit court and the deputy sheriff who attends

upon the court, this case does not pose the issue of the powers of the circuit court over its attendant.

For the foregoing reasons, I dissent.