ROBERT J. MRAZ, Corporation Counsel Oconto County
You request my opinion on several questions concerning the power of a county board of supervisors to reorganize its sheriff's and traffic departments. The traffic department was created pursuant to sec. 83.016, Stats. You state that the county does not have any civil service system which is applicable to sheriffs deputies or traffic officers. You indicate that the county board intends to abolish the position of undersheriff and transfer such officer's duties to a chief deputy. The board intends to abolish the traffic department and place the traffic officers under the authority of the sheriff who would deputize them so that they could assist the sheriff in performance of constitutional and statutory duties. Such deputies would be called deputy patrolmen, but would not be part of a separate division in the sheriff's department. Other deputies would be called deputy investigators, and the department would include a dispatcher and jailer. *Page 200 
Your first question is: Must Oconto County provide for civil service selection of deputies under sec. 59.21(8)(cm), Stats., where the traffic department is abolished and traffic officers are placed under the authority of the sheriff as deputy patrolmen?
The answer is no. I am aware that it was stated in 36 Op. Att'y Gen. 174 (1947) and 38 Op. Att'y Gen. 245 (1949) that a traffic division of the sheriffs department could only be established in connection with an ordinance placing deputies under civil service pursuant to sec. 59.21(8)(cm), Stats. Although the latter statute has not been changed in material degree, the Legislature, subsequent to the issuance of 38 Op. Att'y Gen. 245 (1949). enacted sec. 59.025, Stats., which grants a county board considerable discretionary power with respect to county organization and provides in part:
 (2) INTENT AND CONSTRUCTION. For the purpose of giving counties the largest measure of organizational autonomy compatible with the constitution and general law, it is hereby declared that this section shall be construed in favor of the rights, powers and privileges of counties to organize and administer county functions. The powers hereby conferred shall be in addition to all other grants and shall be limited only by express language but shall be subject to the constitution and such enactments of the legislature of statewide concern as shall with uniformity affect every county. In the event of conflict between this section and any other statute, this section to the extent of such conflict shall prevail.
 (3) CREATION OF OFFICES. Except for the offices of supervisor, county executive and county assessor and those officers elected under section 4 of article VI of the constitution, the county board may:
 (a) Create any county office, department, committee, board, commission, position or employment it deems necessary to administer functions authorized by the legislature.
 (b) Consolidate, abolish or reestablish any county office, department, committee, board, commission, position or employment.
 (c) Transfer some or all functions, duties, responsibilities and privileges of any county office, department, committee, *Page 201 
board, commission, position or employment to any other agency including a committee of the board.
While the powers of the county board cannot be exercised with respect to "those officers elected under section 4 of Article VI of the Constitution," which includes the office of sheriff, certain powers set forth in sec. 59.025(3), Stats., can be exercised with respect to a traffic department and traffic patrol officers appointed pursuant to sec. 83.016, Stats., and to certain positions in the sheriff's department. In OAG 25-82 it was stated that a county board of a county with a population of less than 500,000 could abolish the office of undersheriff and transfer all statutory powers and duties of such officer to a chief deputy civil service position.
In my opinion sec. 59.21(8), Stats., is not an enactment of "statewide concern as shall affect every county." By its own terms it is not applicable to counties having a population of more than 500,000. Further, it is permissive as to counties of less than 500,000 population and counties may elect to have no civil service ordinance or one enacted under sec. 59.07(20) or ch. 63. Stats. See sec. 59.21(8)(d), Stats. You note that Oconto County does not have a deputy sheriffs civil service ordinance, and does not intend to create a traffic division in the sheriffs department and that sec. 59.21(8)(cm), Stats., is therefore not applicable. I agree. If the transfer of personnel is to be accomplished, there will have to be cooperation by the sheriff, who will be the appointing power as to deputies. Under sec.83.016(1), Stats., the appointment of a traffic patrolmen may be revoked at any time by the county board or its committee to which it has delegated the authority. Section 59.21(8)(cm), Stats., is indicative of a legislative attempt to confer power on a county board to ease the way for consolidation of traffic patrolmen appointed pursuant to sec. 83.016, Stats., into a division of the sheriffs department where deputies in such department weresubject to a sec. 59.21(8), Stats., civil service ordinance. But it would be novel and somewhat absurd if traffic patrolmen who had no guarantee of tenure under sec. 83.016, Stats., were required to be accorded civil service ordinance protection under sec. 59.21(8)(cm), Stats., when transferred to the sheriffs department in a county where other employes in the department, including deputies, were not subject to any civil service ordinance.
Your second question is: Does the county board have any control over the employment of the chief deputy, investigator deputies and *Page 202 
patrolmen deputies under the proposed reorganization if the county does not provide for civil service selection?
I am of the opinion that it does in limited degree. The power of appointment and removal would be in the sheriff by reason of secs. 17.10(6) and 59.21(1), (2), (3), (4). Stats. 38 Op. Att'y Gen. 245, 247 (1949), 61 Op. Att'y Gen. 80 (1972). In State exrel. Milwaukee County v. Buech, 171 Wis. 474, 177 N.W. 781
(1920), the court upheld a civil service statute requiring the sheriff to make appointments of deputies from those certified as competent by a commission. It was stated that the power of appointment of deputies was not an immemorial duty which characterized or distinguished the office of sheriff. However, under the statute in Buech the sheriff was the final appointing authority. I am aware that sec. 59.025(4), Stats., provides that a county board may determine the method of selection of certain county offices, with exceptions including sheriff, and that such board could determine the appointing authority subject to secs. 59.031 and 59.032, Stats. It might therefore be argued that the county board could designate itself or one of its committees as appointing power for the new positions of deputy patrolmen. In my opinion, however, sec. 59.21(1), (2), (3), (4), Stats., contains "express language" reserving the power of appointment of deputies to the sheriff and are "enactments of the legislature of statewide concern as shall with uniformity effect every county" and therefore control over sec. 59.025(4), Stats., as to preclude transfer of the appointing power from the sheriff. A county board would have power to establish the number of paid deputies and establish their compensation. Secs. 59.15(2), (3), (4) and59.21(8)(a)(intro). Stats. In limited degree the county board could "establish regulations of employment" for such deputies pursuant to sec. 59.15(2)(c), Stats., and could enter into collective bargaining agreements under secs. 111.70-111.77, Stats. However, a county board cannot bind a sheriff to collective bargaining provisions which contradict or conflict with constitutional or immemorial duties of a sheriff.Professional Police Ass'n v. Dane County, 106 Wis.2d 303,316 N.W.2d 656 (1982). In some cases immemorial duties of a sheriff have been codified into statutory form. It is stated inProfessional Police Ass'n at 312 that "[i]t is the nature of the job assigned rather than the general power of job assignment which must be analyzed in light of the sheriffs constitutional powers." Where constitutional, immemorial or certain express statutory duties are concerned, the county board cannot in a collective *Page 203 
bargaining agreement, or otherwise, deprive the sheriff of the right to select who among his deputies shall act in his stead. After appointment as deputies, such personnel would be primarily subject to lawful orders of the sheriff with respect to assignment of duties in areas which are properly regarded as constitutional or immemorial. Although their working titles would be "deputy patrolman" or "deputy investigator," they would remain deputies and could be utilized by the sheriff to carry out those constitutional, immemorial or statutory duties of the sheriff as such officer may assign without limitation which might be suggested by the job title or organizational table for the sheriffs department promulgated by the county board.
BCL:RJV