MANITOWOC COUNTY, Plaintiff-Respondent-Petitioner,

v.

LOCAL 986B, AFSCME, AFL–CIO, Defendant-Appellant.†

Supreme Court

*No. 90–2097. Oral argument April 28, 1992.—Decided June 11, 1992.*

(Also reported in 484 N.W.2d 534.)

†Motion for reconsideration denied, August 11, 1992.

For the plaintiff-respondent-petitioner there were briefs by *Alan M. Levy, Lisa M. Leemon* and *Lindner & Marsack, S.C.,* Milwaukee, of counsel, *Mark Hazelbaker,* Corporation Counsel, Manitowoc and oral argument by *Mr. Levy.*

For the defendant-appellant there was a brief by *Bruce F. Ehlke* and *Lawton & Cates, S.C.,* Madison and oral argument by *Mr. Ehlke.*

Amicus curiae brief was filed by *Gordon E. McQuillen* and *Cullen, Weston, Pines & Bach,* Madison for The

Wisconsin Professional Police Association/Law Enforcement Employees Relations Division.

Amicus curiae brief was filed by *John M. Loomis* and *Beck, Chaet, Loomis, Molony & Bamberger, S.C.,* Milwaukee for The Badger State Sheriff's Association.

PER CURIAM. This is a review of a published decision of the court of appeals, *Manitowoc County v. Local 986B,* 163 Wis. 2d 911, 472 N.W.2d 600 (Ct. App. 1991), reversing a judgment of the Circuit Court for Manitowoc County, Timothy M. Van Akkeren, circuit judge, which found that the Manitowoc county sheriff was not bound by a collective bargaining agreement when he placed a deputy in a position involving undercover drug investigation. The court of appeals held that the sheriff was bound by the collective bargaining agreement because the position created by the sheriff did not involve one of the constitutionally protected powers of the sheriff. We reverse.

The issue before this court is whether "law enforcement," "preserving the peace" and "criminal investigation" are constitutionally protected powers of the sheriff such that they may not be limited or abridged by a collective bargaining agreement.

The facts are not in dispute. In 1989, the Manitowoc county sheriff reassigned deputy Elijah Humphreys from patrol duty to undercover drug enforcement. Humphreys was given the title of detective and received a pay increase. The sheriff's department listed the assignment as "temporary," to last from six months to three years.

Local 986B, AFSCME, AFL-CIO (the union), objected to the appointment, claiming that the sheriff created a new position and awarded it to Humphreys without posting the position as required under the collective bargaining agreement between the union and the

county. The county responded that the assignment involved the exercise of a constitutionally protected power of the sheriff and could not be abridged by a collective bargaining agreement, or in the alternative, that the position created was temporary and therefore not subject to the collective bargaining agreement's posting requirement.

The dispute was submitted to arbitration as provided for in the collective bargaining agreement. On November 16, 1989, the arbitrator decided in favor of the union. The arbitrator concluded that a "new position" was created because prior to the assignment of Humphreys, no employee of the sheriff's department spent 100 percent of his or her time on drug investigation, and because Humphreys received an increase in pay. The arbitrator concluded that the position did not meet the definition of "temporary" in the collective bargaining agreement, and thus that the sheriff's failure to post the position violated the collective bargaining agreement.

The county filed an action in the circuit court pursuant to sec. 788.10, Stats., to vacate the arbitration award. On August 30, 1990, the circuit court entered judgment in favor of the county and vacated the arbitrator's award. The circuit court reasoned that assignment of an individual to an undercover drug investigation position is within a sheriff's law enforcement and peace-preserving duties, and that "law enforcement" and "preserving the peace" are constitutionally protected powers of the sheriff which may not be abridged by a collective bargaining agreement. The circuit court gave no deference to the arbitrator's decision because the arbitrator exceeded his authority by enforcing a contract which was illegal in respect to the particular issue.

The union appealed the circuit court's decision to the court of appeals. The court of appeals certified the

case to this court, but the certification was denied on June 4, 1991. On June 26, 1991, the court of appeals reversed the circuit court. Construing three prior decisions of this court, *State ex rel. Kennedy v. Brunst,* 26 Wis. 412 (1870), *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 177 N.W. 781 (1920), and *Wisconsin Professional Police Ass'n v. Dane County,* 106 Wis. 2d 303, 316 N.W.2d 656 (1982) (*WPPA I*), the court of appeals held:

> The narrow holding of all three cases is that the constitutional prerogatives of the sheriff are limited to the immemorial, principal and important duties of the sheriff that were unique to the office of sheriff at common law and gave character and distinction to the office.

*Manitowoc County,* 163 Wis. 2d at 917. Applying this rule to the facts of this case, the court of appeals concluded that law enforcement and preserving the peace were not "unique" to the office of sheriff at common law, and thus that the assignment of Humphreys was covered by the collective bargaining agreement. *Id.* at 917-19. The court of appeals further reasoned that if law enforcement and preserving the peace were considered constitutional duties of the sheriff, there would be no duty of the sheriff that would not be constitutionally immune from legislative control. *Id.* at 918. Finally, the court of appeals agreed with the arbitrator that the assignment of Humphreys was permanent as that term is defined in the collective bargaining agreement.

We reverse the court of appeals decision.

■

While the creation of a "uniqueness" requirement may in this case promote broad collective bargaining rights and arbitration, our prior cases clearly establish

that the "immemorial principal and important duties" of the sheriff at common law are constitutionally protected regardless of their uniqueness. Citizens of a county have a right to elect a sheriff to perform certain traditional duties regardless of who else may also have performed them at common law.

This court first recognized that certain duties of the sheriff were constitutionally protected in 1870. In *Brunst,* the court reviewed an attempt by the legislature to transfer the sheriff's control of the county jail to an official asserting the right to exercise that control. The court held that the legislature could not constitutionally "detach from" the office of sheriff "those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted." *Brunst,* 26 Wis. at 414. The court explained its holding:

> By virtue of his office, [the sheriff] insists, and as a part and parcel of the duties from time immemorial belonging to it by law, the sheriff of the county has custody of the common jail and of the prisoners therein; and it is no more competent for the legislature to take from the sheriff that duty and commit it to another officer, than it is to deprive the sheriff of the right to execute writs and processes, or the duty of conserving the public peace. It seems to us that this view of the question is rational, and in harmony with the spirit of the constitution. The office of sheriff, in a certain sense, is a constitutional office; that is, the constitution provides that sheriffs shall be chosen by the electors of the respective counties, once in every two years and as often as vacancies will happen. Sec. 4, art. 6. Now, it is quite true that the constitution nowhere defines what powers, rights and duties shall attach or belong to the office of sheriff. *But there can be no doubt that the framers of the*

*constitution had reference to the office with those generally recognized legal duties and functions belonging to it in this country, and in the territory, when the constitution was adopted.* Among those duties, one of the most characteristic and well acknowledged was the custody of the common jail and of the prisoners therein.

*Id.* at 413–14 (emphasis added).[1] It is apparent from this lengthy excerpt, which is nearly a third of the entire opinion, that it was the existence of the "generally recognized legal duties" at common law, and not their uniqueness to the office of sheriff, that brought them within the scope of a sheriff's constitutionally protected powers.

This court revisited the subject in 1920 in *Buech.* There the question was whether the 1919 civil service act, secs. 16.31–44, Stats. (1919), unconstitutionally infringed upon the duties of the sheriff. The case came before the court when the sheriff refused to recognize the authority of an order of the civil service commission to reinstate a previously suspended deputy sheriff. Citing *Brunst,* the sheriff argued "that at common law the sheriff had power to appoint deputies and it is not competent for the legislature to detract materially from the powers, duties, and liabilities of the sheriff . . .." *Buech,* 171 Wis. at 481. The court rejected the sheriff's argument, explaining:

With no disposition to question the doctrine of [*Brunst*], we do not think it should be extended to the extent here urged. We think it should be confined

[1]Article VI, sec. 4 of the Wisconsin Constitution provides in part:

Sheriffs . . . shall be chosen by the electors of the respective counties once in every 2 years.

to those immemorial principal and important duties that characterized and distinguished the office. While at common law the sheriff possessed the power to appoint deputies, it was not a power or authority that gave character and distinction to the office. Many other officers as well as sheriffs possessed the power. It was more in the nature of a general power possessed by all officers to a more or less extent and was not peculiar to the office of sheriff. It should not be held, in our judgment, that the constitution prohibits any legislative change in the powers, duties, functions, and liabilities of a sheriff as they existed at common law. If that were true, a constitutional amendment would be necessary in order to change the duties of sheriffs in the slightest degree and, in this respect, the state would be stretched on a bed of Procrustes.

*Id.* at 482.[2]

The court of appeals in this case interpreted *Buech* as holding that only those duties "unique" to the office at common law are constitutionally protected, because *Buech* noted that the power to appoint deputies was shared by "[m]any other officers" and "was not peculiar to the office of sheriff." We disagree with this interpretation. A more logical reading of *Buech* is that only those duties which "gave character and distinction" to the office of sheriff at common law are constitutionally protected, and that the power of appointing deputies, being rather mundane and commonplace, did not give character and distinction to the office of sheriff at common

---

[2]Procrustes was a mythological bandit known for placing his victims on an iron bed, tying them to it, and then making them the right length for it by stretching those who were too short and cutting off as much as was necessary from those who were too long. Edith Hamilton, *Mythology* 210–11 (1942).

law. This interpretation is also more consistent with *Brunst* and *WPPA I.*

In *WPPA I,* this court considered whether a sheriff may be limited in his selection of a "court officer" by a collective bargaining agreement. The court concluded that at common law, the sheriff had a "very special relationship with the courts" which "may not be limited by a collective bargaining agreement entered into by the county and a labor union representing deputy sheriffs." *WPPA I,* 106 Wis. 2d at 305. Because the exact nature of the "court officer" in question was unclear on the record, the court remanded the case to the circuit court to determine whether the "court officer" position fell within the constitutionally protected powers of the sheriff.

██ The court in *WPPA I* examined the historical origins of the office of sheriff in some detail. *Id.* at 309–315. Significantly, the court noted:

> Walter H. Anderson, in *A Treatise On The Law of Sheriffs, Coroners and Constables,* describes the sheriff's common law authority as follows:
>
> > In the exercise of executive and administrative functions, in conserving the public peace, in vindicating the law, and in preserving the rights of the government, he (the sheriff) represents the sovereignty of the State and *he has no superior in his county.* (Emphasis added.)
>
> This comports with the role of the office as described by Blackstone:
>
> > "As keeper of the king's peace, both by common law and special commission, he is the first man in the county, and superior in rank to any nobleman therein, during his office."

*Id.* at 309 (footnotes omitted). It is clear from this discussion that law enforcement and preserving the peace are duties which "gave character and distinction" to the office of sheriff at common law, despite the fact that these duties were shared with the watch and the constable. *See* 16A Eugene McQuillin, The Law of Municipal Corporations § 45.06.10 (3rd ed. 1984). At the time the Wisconsin Constitution was written and an election of a sheriff provided for, the framers were surely aware of the sheriff's role of law enforcement and preserving the peace.[3]

Thus it is clear that the immemorial principal and important duties that characterized and distinguished the office of sheriff at common law are constitutionally protected regardless of whether those duties were unique to the office of sheriff. Moreover, a "uniqueness" requirement makes little sense. The rationale in *Brunst* was that the citizens of the county had a right to elect a sheriff who would perform a sheriff's traditional func-

---

[3]The court of appeals in *Wisconsin Professional Police Ass'n v. Dane County,* 149 Wis. 2d 699, 439 N.W.2d 625 (Ct. App. 1989) (*WPPA II*) also examined the traditional functions of a sheriff which are protected by the constitution. In *WPPA II,* the court of appeals vacated an arbitrator's award because it interfered with the sheriff's duty of attendance upon the court. Regarding the sheriff's " 'immemorial principal and important duties that characterized and distinguished the office' of sheriff at common law," the court stated:

> At common law, the duties of the sheriff were four fold. He was the keeper of the king's peace within the county; he was the king's bailiff; he heard and determined certain causes of action in his judicial capacity; and finally, in his ministerial capacity, he executed all process issuing from the king's superior courts of justice.

*WPPA II,* 149 Wis. 2d at 706, *citing* W.H. Watson, *A Practical Treatise on the Law Relating to the Office and Duties of Sheriffs, reprinted in* 5 *The Law Library* 1, 1 (1835).

tions unencumbered by the legislature, regardless of whether other officials also performed the same or similar functions. There is no reason why the constitution should protect only those traditional duties which were "unique" to the office of sheriff at common law. For example, if the sheriff and the district attorney had historically jointly controlled the county jail, can it be said that *Brunst* should have been decided differently? No. The point is that when the citizens of a county elect a sheriff, they empower that person to perform certain traditional functions free of other interference.

The resolution of the issue in *WPPA I* lends guidance in this case, because that case also involved a limitation by a collective bargaining agreement on the sheriff's power to appoint a deputy to a certain position. After reviewing both *Brunst* and *Buech,* the court stated:

> The real question is whether the duties performed by the "court officer" are among the principal and important duties which characterized the office of sheriff so that the sheriff may not be restricted as to whom he appoints to perform the functions. It is the nature of the job assigned rather than the general power of job assignment which must be analyzed in light of the sheriff's constitutional powers.

*Id.* at 312. Thus the precise question in this case is whether the nature of the job assigned by the Manitowoc county sheriff falls within the scope of the sheriff's constitutionally protected powers.

Deputy Humphreys was assigned as an undercover drug investigation officer. Undercover detective work implicates both law enforcement and peace-preserving functions of a sheriff. As described by this court in

*Andreski v. Industrial Comm'n,* 261 Wis. 234, 52 N.W.2d 135 (1952):

> Within the field of his responsibility for the maintenance of law and order the sheriff today retains his ancient character and is accountable only to the sovereign, the voters of his county, though he may be removed by the governor for cause. No other county official supervises his work or can require a report or an accounting from him concerning his performance of his duty. He chooses his own ways and means of performing it. He divides his time according to his own judgment of what is necessary and desirable but is always subject to call and is eternally charged with maintaining the peace of the county and the apprehension of those who break it. In the performance of this duty he is detective and patrolman, as well as executive and administrator, and he is emphatically one of those who may serve though they only stand and wait. We recite these qualities and characteristics of the office not because they are novel but because they are so old that they are easily forgotten or unappreciated.

*Id.* at 240. Thus undercover detective work is a contemporary method of the exercise of the sheriff's historical duties of maintaining law and order and preserving the peace.

Because a sheriff's historical duties of maintaining law and order and preserving the peace are duties which "gave character and distinction" to the office of sheriff, *WPPA I,* 106 Wis. 2d at 309, and because the undercover assignment of Humphreys involves those duties, we hold that the assignment of deputy Humphreys falls within the constitutionally protected powers of a sheriff and cannot be limited by a collective bargaining agreement.

Because the posting requirement as applied to the Manitowoc sheriff's assignment of deputy Humphreys is illegal, the arbitrator exceeded his authority by enforcing that provision and the arbitrator's award was properly vacated by the circuit court. *Glendale Professional Policemen's Ass'n v. Glendale,* 83 Wis. 2d 90, 98, 264 N.W.2d 594 (1978).

The union argues that this decision will lead to the situation forewarned in *Buech* where neither the legislature nor a collective bargaining agreement may ever limit a sheriff's power. The union asserts that nearly every function of the sheriff may be described as a law enforcement duty, and that in effect the office of sheriff will become a fourth branch of government. This argument is hyperbolic. The legislature may still regulate the administrative and executive duties of a sheriff, and the collective bargaining agreement will still control wages, hours and conditions of employment. Where the courts eventually decide to draw the line regarding which activities of a sheriff involve law enforcement and preserving the peace such that they are constitutionally protected is not at issue here; the focus here is on the job assigned—undercover detective work—and undercover detective work is part of a modern sheriff's traditional and historical duties of law enforcement and preserving the peace.

*By the Court.*—The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. (*dissenting*). I would affirm the decision of the court of appeals for the reasons stated in that opinion, *Manitowoc County v. Local 986B,* 163 Wis. 2d 911, 472 N.W.2d 600 (Ct. App. 1991).

This case raises the question whether the sheriff's appointment of an undercover drug agent falls within the ambit of the sheriff's constitutional power not subject to legislative limitation or collective bargaining.

Our prior cases hold that the scope of the constitutional power of a sheriff is not measured simply by the historical duties of the sheriff. The constitutional prerogatives of the sheriff are limited, say the cases, to the immemorial principal and important duties of the sheriff which gave character and distinction to the office. *State ex rel. Kennedy v. Brunst,* 26 Wis. 412, 414 (1870); *State ex rel. Milwaukee County v. Buech,* 171 Wis. 474, 482, 177 N.W. 781 (1920); *Wisconsin Professional Police Ass'n v. Dane County,* 106 Wis. 2d 303, 319, 316 N.W.2d 656 (1982).

At common law, the sheriff shared the duty of conserving the peace with other law enforcement agencies. See *State ex rel. Kennedy v. Brunst,* 26 Wis. 412, 414 (1870); 16A E. McQuillin, *The Law of Municipal Corporations* sec. 45.06a (rev. 3d ed. 1984).

While internal management of the sheriff's office is important and was generally recognized as under the sheriff's control when the constitution was adopted, it does not give character and distinction to the office of sheriff. Thus even if an undercover drug officer is performing duties that may be part of the constitutional duties of the office of sheriff, the manner of filling a job may be regulated by the legislature. I conclude that this opinion *sub silentio* overrules the *Buech* case.

The majority opinion reinterprets the cases to say that the immemorial, principal, and important duties of the sheriff at common law are constitutionally protected, regardless of their lack of uniqueness to the sheriff's office. According to the majority opinion, enforcing the law and preserving the peace are within the scope of the

sheriff's constitutionally protected powers. Every aspect of the sheriff's work is related in one way or another to peace keeping. Therefore, if the majority's reasoning is taken to its logical conclusion, all the sheriff's duties are constitutionally protected from legislative limitations and cannot be subject to collective bargaining, arbitration or the civil service system. This interpretation of the sheriff's duties defeats the strong legislative policy in this state favoring collective bargaining and arbitration in the municipal context.

The majority opinion's only defense to this charge is to take the offensive and characterize the union's argument as hyperbolic. The majority opinion insists that this case is not about drawing a line between those law enforcement and peace keeping activities of a sheriff that are constitutionally protected and those that are not. I think that both the facts and the majority opinion present this very issue.

For the foregoing reasons, I dissent.

I am authorized to state that CHIEF JUSTICE NATHAN S. HEFFERNAN and JUSTICE WILLIAM A. BABLITCH join this dissent.