SKELLY, Respondent, vs. INDUSTRIAL COMMISSION and another, Appellants.

*January 21—February 15, 1949.*

For the appellant Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan* and *Mr. Hugh F. Oldenburg* of Madison.

For the respondent there was a brief by *Hall & Griffith* of Madison, and oral argument by *Laurence W. Hall.*

FRITZ, J.  Clara E. Skelly, the applicant for compensation under the Workmen's Compensation Act, claims that on January 15, 1946, she sustained an injury while working as an employee of the Oscar Mayer & Company.  In the proceedings pursuant to her application, evidence was taken by an examiner of the Industrial Commission, who found,—

"That although the applicant alleges she injured her back on January 15, 1946, while pushing a basket of canned meat . . . the record fails to establish injury; that the applicant did not sustain injury within the meaning of the Workmen's Compensation Act; that the disabilities and complaints of the applicant were not caused by, aggravated by, nor related to, her employment with the respondent; that in view of the finding of no injury, the other issues herein are immaterial."

Upon these findings the examiner ordered the dismissal of the application; and upon review the examiner's findings and order were affirmed by the Industrial Commission.

On the hearing before the examiner the applicant testified that on January 15, 1946, while bending over in doing her work of "pushing on the run" with her hands and body a wire basket, which contained about seven hundred pounds of meat, and which rested on the rollers of an inclined runway, the basket stuck and "something unusual" happened to her and she had a "backache" and was "injured."  She had been at work since six o'clock that morning and had pushed quite a few similar baskets before the occasion of her injury.  Upon reporting the incident immediately to her superior, she was sent to the employer's first-aid office and there she received a fifteen-minute heat treatment.  The applicant testified she had

been in good health prior to January 15, 1946; but after that and before May 3d, she sensed the pain in her right hip and had a backache and still has a pain at a point which she indicated was about below the small of her waist on the right hand side, and about two inches posterior from a line dropped down the center of her right leg. She testified also that on January 15th, "when I state I suffered injury I felt something slipped in my right side," and she indicated the area behind and above her right hip and stated "I still have a sore spot right there. . . . I didn't feel any pain at that time on my spine."

In May, 1946, the attendant at the employer's first-aid office sent the applicant to Dr. Robert E. Burns and he then and again in November, 1946, made an examination of the applicant and of X rays taken of her at his directions. He was the only physician called as a witness and his testimony was to the following effect,—

As a result of his examination of the applicant and the X rays taken in May, 1946, his diagnosis of her condition was that she had a scoliosis with rotation, and lumbosacral arthritis, and a sacralization of her fifth lumbar vertebra. That is the condition in which there is an abnormality in the last lumbar vertebra, as a result of which the transverse process impinges on the side of the sacrum and the ilium, and may be a cause of pain. The X rays taken in November, 1946, show the curvature of the spine and also show the rotation of the individual vertebrae bodies as evidenced by the fact that the spinous process is not in the center of the silhouette of the individual vertebral body; and that she has an obliquity of the pelvis in response to her scoliosis and a sacralization and arthritis in the lumbosacral area.

To the question: "Would an accident, any accident that she may have had, produce, or bring about the condition that you find that she has in the X rays that you have testified to?" Dr. Burns testified: "No."

He testified also that the applicant had a congenital abnormality, that the condition had existed for many years; and that the various abnormalities in the structure of her back or any

or all, or a combination of the abnormal structure, structural architecture of this woman's back, certain arthritic changes to certain spurring, to which he testified, could produce the pain or backache that the applicant complains of; that any accident which she may have had, would not produce or bring about the condition that Dr. Burns found she has in the X rays to which he testified; that the applicant complained to Dr. Burns especially about the prominence of her right hip (which Dr. Burns stated is only a reflection of her scoliosis) and that the scoliosis was getting worse.

And Dr. Burns testified if she sustained a sprain or strain at the time of the incident on January 15, 1946, the pain would be at the maximum at that time but that if the thing is due to cartilaginous degeneration and arthritis, then it would gradually get worse as time went on.

As there was no evidence contrary to the testimony and conclusions of Dr. Burns or any basis for holding that his testimony as to the applicant's physical condition and the causes and consequences thereof is incredible, it was clearly within the province of the examiner and the commission to find and conclude,—

"That although the applicant alleges she injured her back on January 15, 1946, . . . the record fails to establish injury; that the applicant did not sustain injury within the meaning of the Workmen's Compensation Act; that the disabilities and complaints of the applicant were not caused by, aggravated by, nor related to, her employment with the respondent. . . ."

In determining whether this finding was warranted, and in considering the significance thereof it must be noted that by the definition in sec. 102.01 (2), Stats., "'injury' is mental or physical harm to an employee caused by accident or disease. . . ."

As stated in *Schmitt v. Industrial Comm.* 224 Wis. 531, 535, 272 N. W. 486,—

"Unless, however, the disability be shown to have resulted from an occupational disease, its cause must be found in an accident in order to warrant the award of compensation, and

*a mere breakdown due to disease is not compensable,* even if the physical effort involved in the work made some contribution to the final disability."

Thus, as was stated in *Employers Mut. L. Ins. Co. v. Industrial Comm.* 212 Wis. 669, 671, 250 N. W. 758,—

"One may be so afflicted with heart disease that anything which amounts to exercise in the usual procedure of his work may destroy his life. It would seem fair to say in such an instance that no industrial accident was responsible for the injury or the death."

The burden of proving that there existed the conditions requisite to entitle the applicant to compensation rested upon her. *Milwaukee E. R. & L. Co. v. Industrial Comm.* 222 Wis. 111, 267 N. W. 62.

And, as stated in *Beem v. Industrial Comm.* 244 Wis. 334, 337, 12 N. W. (2d) 42,—

"If the evidence before the commission was such as to raise in the minds of the commission a legitimate doubt as to the existence of facts essential to compensation, it would be the duty of the commission to deny compensation, on the ground that the applicant did not sustain the burden of proving to the satisfaction of the commission that the facts were as he claimed them to be."

As in this action there is no evidence to establish affirmatively that the applicant slipped or fell or in any other way sustained any physical harm as the result of any sprain or strain caused by an industrial accident; but, on the contrary, there is Dr. Burns' uncontroverted testimony that her backache and disability probably were due to a congenital abnormality of the bones and ligaments in the region of the sacrum and ilium at the base of the spinal column, the judgment must be reversed.

*By the Court.*—Judgment reversed and cause remanded with directions to affirm the order of the Industrial Commission.