KENNETH J. BUKOWSKI, Corporation Counsel Brown County
You ask two questions concerning the authority of a sheriff with respect to dispatch operations. Your first question is as follows: "Does the Sheriff have authority, either statutory and/or at common law, to enter an agreement such as the attached dispatch agreement without approval by the County Board or one of its committees?"
In my opinion, the answer is no.
In essence, the agreement would provide twenty-four hour dual dispatch service to the Oneida Tribal Public Safety Department for a one year period in return for a monthly payment of $1,600.00. That service would be provided for areas within the town of Hobart in Brown County which are outside the city of Green Bay and the village of Ashwaubenon. Where law enforcement personnel are required in connection with incidents occurring in such areas, the dispatcher in the Brown County sheriff's department would alert both Brown County sheriffs' deputies and Oneida public safety officers to respond. In addition, single dispatch services would be provided in connection with Oneida-owned facilities in the village of Ashwaubenon whereby village authorities would be notified, but only Oneida public safety officers would be alerted to respond.
As to the sheriff's power to contract, I recently stated in 77 Op. Att'y Gen. 94, 95 (1988) that "a county officer has no power to contract `except in cases of express grant of authority, or where *Page 86 
it may be fairly implied from the nature of the act authorized.'" Aside from powers concerning the appointment of deputies, the principal statutory powers of the sheriff are enumerated in section 59.23, Stats. Those substantive powers do not include the authority to contract for the provision of dispatch services to outside agencies.
The only statute expressly authorizing the sheriff to enter into contracts is section 59.07, which provides in part as follows:
The board of each county shall . . . .
. . . .
 (47) CONTRACT WITH U.S. FOR CUSTODY OF FEDERAL PRISONERS. Empower the sheriff or superintendent of the house of correction to contract with the United States to keep in the county jail or house of correction any person legally committed under U.S. authority, but not for a term exceeding 18 months.
There is also no evidence that the power of the sheriff to enter this kind of contract may be statutorily implied. Section59.07(141) provides as follows: "COUNTY-TRIBAL LAW ENFORCEMENTPROGRAMS. Pursuant to adoption of a resolution, a county board may enter into an agreement and seek funding under s. 165.90." Section 165.90, in turn, authorizes counties that contain federally recognized Indian tribes within their boundaries to apply to the Wisconsin Department of Justice for funding not to exceed $20,000 per fiscal year for any "cooperative county-tribal law enforcement program." Sec. 165.90(1), Stats.
Whether or not such funding could be obtained in connection with this particular agreement, these statutes indicate that the power to enter into binding reciprocal law enforcement agreements with Indian tribes rests with the county board rather than sheriff. I find no state law from which the sheriff's power to do so could be implied. *Page 87 
Unless a specific statute or a constitutional provision applies, the power to contract generally rests with the county board rather than individual county officers. Section 59.01(1) provides as follows:
 STATUS. Each county in this state is a body corporate, empowered to sue and be sued, to acquire and hold, lease or rent real and personal estate for public uses or purposes, including lands acquired under ch. 75, to sell, lease and convey the same, including the authority to enter into leases or contracts with the state for a period of years for the uses and purposes specified in s. 23.09(2)(d), to make such contracts and to do such other acts as are necessary and proper to the exercise of the powers and privileges granted and the performance of the legal duties charged upon it.
I find no statute removing this power from the county board under the circumstances you describe.
Although I find no express or implied statutory authority for sheriffs to enter into contractual agreements of the kind you describe, the sheriff also has certain common law powers preserved by Wisconsin Constitution article VI, section 4. That constitutional provision precludes both the Legislature and the county board from infringing upon "those immemorial principal and important duties that characterized and distinguished the office" at common law when the Wisconsin Constitution was adopted. Stateex rel. Milwaukee County v. Buech, 171 Wis. 474, 482,177 N.W. 781 (1920). Examples of such powers include attendance on the court and running the jail. Professional Police Ass'n v. DaneCounty, 106 Wis.2d 303, 313, 316 N.W.2d 656 (1982); State exrel. Kennedy v. Brunst, 26 Wis. 412, 414 (1870).
There was no radio dispatch when the Wisconsin Constitution was adopted. The sheriff, therefore, may be required by the Legislature or the county board to grant access to a centralized county law enforcement radio channel if the proposed use of that channel is for police and emergency purposes. See 76 Op. Att'y Gen. 7, 8-9 (1987). *Page 88 
Assuming for the sake of discussion that tribal public safety officers have lawful access to communications from your county's dispatcher and that such dispatches are made solely for the purpose of enhancing the sheriff's law enforcement functions, I am also not persuaded that the power to contract involves an important, immemorial duty of the sheriff. Even assuming that sheriffs could enter into contracts at the time the Wisconsin Constitution was adopted, that power would not have distinguished the office of the sheriff from other constitutional county officers or from the county board. The following statements by the Wisconsin Supreme Court are therefore as applicable to the sheriff's power to contract as they are to the sheriff's power to deputize:
 While at common law the sheriff possessed the power to appoint deputies, it was not a power or authority that gave character and distinction to the office. Many other officers as well as sheriffs possessed the power. It was more in the nature of a general power possessed by all officers to a more or less extent and was not peculiar to the office of sheriff. It should not be held, in our judgment, that the constitution prohibits any legislative change in the powers, duties, functions, and liabilities of a sheriff as they existed at common law. If that were true, a constitutional amendment would be necessary in order to change the duties of sheriffs in the slightest degree and, in this respect, "the state would be stretched on a bed of Procrustes."
Buech, 171 Wis. at 482.
I therefore conclude that sheriffs lack statutory or common law authority to contract to provide county dispatch services to outside entities such as tribal public safety departments.
Your second question is as follows:
 If the Sheriff cannot enter an agreement such as the one attached, without County Board approval, does the Sheriff have the authority to unilaterally institute a dispatch policy, *Page 89 
either written or oral? In other words, in the absence of a written or oral contract, could the Sheriff direct his dispatchers to dispatch law enforcement personnel (including Oneida Tribal Public Safety officers) in a fashion determined by the Sheriff to be in the best interests of the County?
In my opinion, the answer is yes, provided that Oneida public safety officers have obtained lawful access to the county radio channel.
As I interpret your inquiry, in the absence of county board approval of the agreement enclosed with your request, the sheriff proposes to establish a policy whereby his dispatchers would be required to alert both tribal public safety officers and deputy sheriffs to respond to incidents in the town of Hobart and to alert tribal public safety officers to respond to incidents on Oneida property in the village of Ashwaubenon, with concomitant notification to village law enforcement authorities. I caution that "[g]enerally, a sheriff has a duty to keep the peace and enforce state law and county ordinances throughout the county regardless of municipal boundaries, and may take such means as he deems necessary to carry out those duties." 61 Op. Att'y Gen. 256, 258 (1972). In addition, if the radio channel used to provide dispatch services in your county is similar to that described in 76 Op. Att'y Gen. 7, then access to that channel is initially controlled by the county, although that gatekeeper function may be delegated to the sheriff. 76 Op. Att'y Gen. at 8. However, since your inquiry presupposes that tribal public safety officers have lawfully obtained access to the dispatch services you describe, I will assume that to be the case.
Where the sheriff has been delegated the authority to perform dispatch duties in furtherance of his or her law enforcement functions, it is the sheriff's prerogative to instruct all deputies how those functions will be carried out. As stated inAndreski v. Industrial Comm., 261 Wis. 234, 240, 52 N.W.2d 135
(1952): *Page 90 
 Within the field of his responsibility for the maintenance of law and order the sheriff today retains his ancient character and is accountable only to the sovereign, the voters of his county, though he may be removed by the governor for cause. No other county official supervises his work or can require a report or an accounting from him concerning his performance of his duty. He chooses his own ways and means of performing it. He divides his time according to his own judgment of what is necessary and desirable but is always subject to call and is eternally charged with maintaining the peace of the county and the apprehension of those who break it. In the performance of this duty he is detective and patrolman, as well as executive and administrator, and he is emphatically one of those who may serve though they only stand and wait.
Accord: 78 Op. Att'y Gen. 1, 4 (1989); 76 Op. Att'y Gen. at 8. AsAndreski and these opinions indicate, it is the sole prerogative of the sheriff to direct his or her deputies in the performance of their law enforcement functions.
I therefore conclude that, while sheriffs lack statutory or common law authority to contract to provide county dispatch services to outside entities such as tribal public safety departments, sheriffs do have exclusive authority to instruct their deputies as to how such dispatch services should be performed in furtherance of their law enforcement functions.
DJH:FTC *Page 91