COURT OF APPEALS
DECISION
DATED AND FILED

October 16, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2018AP1799**

**STATE OF WISCONSIN**

Cir. Ct. No. 2016CV353

**IN COURT OF APPEALS
DISTRICT II**

WILLIAM C. BROWN AND BETH A. BROWN,

    PLAINTIFFS-COUNTER
    DEFENDANTS-APPELLANTS,

  V.

MUSKEGO NORWAY SCHOOL DISTRICT GROUP HEALTH PLAN,

    DEFENDANT-COUNTER CLAIMANT-RESPONDENT.

APPEAL from a judgment and an order of the circuit court for Waukesha County:  WILLIAM DOMINA, Judge.  *Affirmed in part; reversed in part and cause remanded with directions.*

Before Reilly, P.J., Gundrum and Kessler, JJ.

¶1    REILLY, P.J.  William C. Brown was injured in a motorcycle accident.  Brown declined worker's compensation coverage and wanted coverage

provided by his own health insurance policy. The circuit court found that Brown was in the course of his employment when he was injured and further found that Brown's health insurance policy expressly excluded coverage as benefits were available to Brown under the worker's compensation law. We affirm.

¶2 On November 4, 2015, Brown suffered significant injuries in a serious motorcycle accident. At the time, Brown was a salaried employee of Gardner Pet Group, which had two plant locations in Wisconsin: one in Juneau and one in West Bend. Brown's office was located at the West Bend location, but he was often required at both locations. The morning of the accident, Brown attended a meeting at the Juneau plant and remained at the Juneau plant until approximately 2:00 p.m.

¶3 The accident occurred at approximately 2:47 p.m. as Brown was traveling east on Highway 33, which is the most direct route to his office at the West Bend plant. Brown claims that he left the Juneau plant to enjoy a motorcycle ride on a beautiful day and to have lunch as he had already put in an eight-hour day. He explained that he "just started meandering" on the roads and at some point he ended up back on Highway 33. When asked whether he was planning on going back to his office, Brown responded, "I don't know to be honest with you. I don't know if I was…. The concept would be let's just go for a ride."

¶4 Five days after the accident, Gardner Pet Group submitted a claim to the Wisconsin Department of Workforce Development's Worker's Compensation Division, indicating that Brown was "driving from one work location to another" when the accident occurred. Thereafter, Travelers Property Casualty Company of America (Travelers)—Gardner Pet Group's worker's compensation carrier— opened a file and began its claims investigation. Travelers completed its

investigation on November 12, 2015, and determined that Brown's claim was compensable and that "[t]he accident arose out of and in the course of [Brown's] employment." When Brown discovered the claim had been filed, he refused the worker's compensation checks he received from Travelers and instructed Gardner Pet Group to withdraw the claim,[1] arguing that he was not working at the time of his accident.

¶5     Muskego Norway School District Group Health Plan (the Plan)—Brown's health insurer—also investigated whether it owed coverage and sent a standard questionnaire to Brown, which included the question, "Was treatment required as the result of a work related Injury or Illness," and the box was marked, "No." The form was signed on February 11, 2016, by Brown's attorney. Relying on the questionnaire, the Plan paid $482,099.61 for Brown's medical care and treatment as a result of the accident.

¶6     Brown filed this action on February 22, 2016, against the driver and insurer of the vehicle that hit him, alleging negligence.[2] The amended complaint also named the Plan as a subrogated party for the health care payments that it made and Travelers in the event it made payments. On July 17, 2017, the Plan filed an amended answer and counterclaim seeking a declaration under WIS. STAT.

---

[1] The first indication that Brown did not want his claims paid under his worker's compensation coverage was a November 11, 2015 e-mail from Gardner Pet Group to Travelers, which stated that "Brown would like to put the workers comp claim on hold for now. He has an attorney and will be going down another avenue at this point." Brown's personal injury attorney also sent an e-mail to Gardner Pet Group on November 13, 2015, stating that "Brown is not making a workers compensation claim at this time, and we acknowledge that the company has offered him the opportunity to do so. In the event that a claim has been made to your company's workers compensation carrier, please rescind that claim."

[2] The other driver and her insurer were dismissed from the suit under a settlement on January 23, 2017.

3

§ 806.04 (2017-18)[3] that the Plan was not obligated to pay any claims arising from the accident pursuant to the Plan language as Brown was covered by worker's compensation benefits. The circuit court agreed and granted the Plan's motion for summary judgment and entered a judgment in the amount of $514,551.28, which included costs and interest against Brown in favor of the Plan. Brown appeals from both the order granting summary judgment as well as the judgment awarding interest and costs.

## DISCUSSION

¶7      We review a circuit court's grant of summary judgment utilizing the same methodology as the circuit court. *Green Spring Farms v. Kersten*, 136 Wis. 2d 304, 314-16, 401 N.W.2d 816 (1987). "[S]ummary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *M & I First Nat'l Bank v. Episcopal Homes Mgmt., Inc.*, 195 Wis. 2d 485, 496-97, 536 N.W.2d 175 (Ct. App. 1995); *see also* WIS. STAT. § 802.08(2). Summary judgment presents a question of law that we review de novo. *M & I First Nat'l Bank*, 195 Wis. 2d at 497. Interpretation of an insurance contract is a question of law we review de novo. *Varda v. Acuity*, 2005 WI App 167, ¶7, 284 Wis. 2d 552, 702 N.W.2d 65.

*Plan Language*

¶8      We begin with the plain language of the policy. Section 6 of the Plan indicates that "[t]he Plan does not provide benefits"

---

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

> [f]or any … injury arising out of and in the course of employment if benefits are available under any Workers' Compensation Act or other similar law…. This exclusion also applies whether or not you claim the benefits or compensation. It also applies whether or not you recover from any third party.

Further, under general provisions, the Plan provides that

> All money paid or owed by Workers' Compensation for services provided to a Member shall be paid back by, or on behalf of, the Member to the Plan if the Plan has made or makes payment for the services received.

Similarly, under the "Right of Recovery," the Plan provides: "Whenever payment has been made in error, the Plan will have the right to recover such payment from you …." To determine whether the Plan's exclusion applies, we apply Wisconsin's worker's compensation law to the facts of this case.

*Worker's Compensation Law: "Traveling Employees"*

¶9 WISCONSIN STAT. § 102.03(1)(c) of the Worker's Compensation Act provides that where an employee sustains an injury, an employer may only be held liable for injuries that occur while "the employee is performing service growing out of and incidental to his or her employment." Specifically, § 102.03(1)(f) creates a presumption of workers compensation coverage for traveling employees, providing in pertinent part that "[l]iability under this chapter shall exist against any employer only where the following conditions concur:"

> (f) Every employee whose employment requires the employee to travel shall be deemed to be performing service growing out of and incidental to the employee's employment at all times while on a trip, except when engaged in a deviation for a private or personal purpose. *Acts reasonably necessary for living or incidental thereto shall not be regarded as such a deviation.* Any accident or disease arising out of a hazard of such service shall be deemed to arise out of the employee's employment.

(Emphasis added.)

¶10    A deviation for a personal purpose that is reasonably necessary for living or incidental thereto is known as the "personal comfort doctrine." Recognized first in *Milwaukee Western Fuel Co. v. Industrial Commission*, 159 Wis. 635, 150 N.W. 998 (1915), our supreme court explained that the personal comfort doctrine was devised

> to cover the situation where an employee is injured while taking a brief pause from his labors to minister to the various necessities of life. Although technically the employee is performing no services for his employer in the sense that his actions do not contribute directly to the employer's profits, compensation is justified on the rationale that the employer does receive indirect benefits in the form of better work from a happy and rested workman, and on the theory that such a minor deviation does not take the employee out of his employment.

*Marmolejo v. DILHR*, 92 Wis. 2d 674, 678, 285 N.W.2d 650 (1979) (quoting Comment, *Workmen's Compensation: The Personal Comfort Doctrine*, 1960 WIS. L. REV. 91, 91). The court further explained that "[e]mployees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred," or if "the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment." *Marmolejo*, 92 Wis. 2d at 680 (citation omitted).

¶11    Our supreme court addressed the personal comfort doctrine in *Dibble v. DILHR*, 40 Wis. 2d 341, 346, 161 N.W.2d 913 (1968), and concluded that in order for the presumption of coverage for a traveling employee to not apply, "there must be a finding of two essential facts …. There must be (1) a deviation by the employee from his business trip, and (2) such deviation must be for a personal purpose not reasonably necessary for living or incidental thereto."

¶12   Brown first argues that WIS. STAT. § 102.03(1)(f) is inapplicable to him as it is known as the "traveling salesman" statute and applies only to "employees who are living and working away from home." We disagree as the statute contains no such limitation, and we conclude that § 102.03(1)(f) is not limited to employees living and working away from home.[4] The statute applies to "[e]very employee whose employment requires the employee to travel," and Brown was required to "travel" between the Juneau plant and the West Bend plant during the workday.

¶13   As WIS. STAT. § 102.03(1)(f) is applicable to Brown, the next question is whether the evidence in this case overcame the presumption that Brown "shall be deemed to be performing service growing out of and incidental to the employee's employment at all times while on a trip." Sec. 102.03(1)(f). This involves determining whether the accident occurred during a deviation from Brown's employment and, if so, whether that deviation was for a personal purpose not falling under the personal comfort doctrine. Brown argues that the evidence establishes that the presumption in § 102.03(1)(f) was rebutted as he "was taking a detour for personal objectives at the time of the accident." We disagree.

¶14   The burden of proving a personal deviation under WIS. STAT. § 102.03(1)(f) is on the party asserting the deviation. *CBS, Inc. v. LIRC*, 219

---

[4] *See Lager v. DILHR*, 50 Wis. 2d 651, 659, 185 N.W.2d 300 (1971) (applying WIS. STAT. § 102.03(1)(f) to a car salesman traveling to attempt to sell car to customer after hours), *Bergner v. Industrial Comm'n*, 37 Wis. 2d 578, 589-90, 155 N.W.2d 602 (1968) (applying statute to an employee delivering a television to a customer in Michigan), *Andreski v. Industrial Comm'n*, 261 Wis. 234, 235-37, 52 N.W.2d 135 (1952) (applying statute to sheriff who was on the road for work); *see also Neese v. State Med. Soc'y*, 36 Wis. 2d 497, 504, 153 N.W.2d 552 (1967) ("This court has generally adopted a liberal construction of the workmen's compensation statutes.").

Wis. 2d 564, 579, 579 N.W.2d 668 (1998). The presumption found in § 102.03(1)(f) is strong, as our supreme court explained:

> Under this section every employee whose employment requires him to travel is to be deemed while so engaged to be performing service growing out of and incidental of his employment. This applies at all times while he is on a trip, and any injury occurring during such employment shall be deemed to arise out of his employment. It would seem to follow that *if all that can be learned about the injury from the circumstances and from the testimony of individuals would leave the matter within the realm of speculation, then he must be deemed to be within the scope of his employment. The inference arising from the employment controls unless there is evidence which overpowers that inference.*

*Hansen v. Industrial Comm'n*, 258 Wis. 623, 625, 46 N.W.2d 754 (1951) (emphasis added); *see also* *Andreski v. Industrial Comm'n*, 261 Wis. 234, 243, 52 N.W.2d 135 (1952). The circuit court found *Hansen* persuasive, determining that there was a presumption of continuing employment in this case under § 102.03(1)(f) and the evidence in the record was insufficient to rebut that presumption as Brown's testimony "only creates speculation." We agree.

¶15 According to Brown, he was on a personal excursion at the time of the accident, as he testified:

> At that point I hadn't had lunch, I had already had eight hours of employment, and so the whole purpose of me getting up that early in the day was so I could go for a bike ride….
>
> And so clearly for—in my mind I was—I needed lunch, but I was going to at the same time, because of the warmth of the day, kind of like the last day of the year, go for a ride. And that's what I started to do.

Brown's assertion that he was on a "personal excursion" is not enough as he also must show that the deviation was for a personal purpose "not reasonably necessary for living or incidental thereto." *Dibble*, 40 Wis. 2d at 346. The circuit court

noted Brown's deposition testimony in which he testified that he did not know if he planned to go back to the office and further stated, "Let me clarify one thing. I think I said earlier in the day in this deposition that I wasn't sure if I was going to go back. So it wasn't like I'm done for the day, I'm checking out, I can say that." In an answer to an interrogatory, Brown stated that "I was riding my motorcycle to get lunch by myself when this incident took place." In a motion, Brown's counsel stated that "Brown left Gardner's work premises on his motorcycle to have a lunch break." Travelers' claim note states that Brown "had left McDonald's after just visiting a plant and made a decision to take his motorcycle out for a ride because it was a beautiful day." In another part of the record, Brown's counsel referred to him leaving Gardner's property "to have a break for lunch." Brown's deviation for a lunch break or for a motorcycle ride on the way back to West Bend does not fall within a deviation for a personal purpose "not reasonably necessary for living or incidental thereto."

¶16    In sum, there is no evidence that overpowers the presumption of continued employment found in WIS. STAT. § 102.03(1)(f). Brown was required to travel between the two work locations on a regular basis as part of his employment and the most direct route between those two locations was Highway 33, which runs between the Juneau and West Bend plants. Although Brown argues he took a circuitous route when he left the Juneau plant to perhaps go for a ride or to get lunch, the facts indicate that when the accident occurred he was back on his normal work route on Highway 33 heading in the direction of the West

Bend plant.[5] There does not appear to be any evidence in the record that Brown's employer was not expecting him back in the office on the day of the accident,[6] and by all accounts his employer believed he had a valid worker's compensation claim. Brown's own testimony also did not confirm that he was not heading back to his office or that he did not plan to return to work that day.[7] Accordingly, we cannot conclude that Brown met his burden of proving a personal deviation "not reasonably necessary for living or incidental thereto" that overpowers the presumption under § 102.03(1)(f).

¶17    Brown argues that cases have held that employees are not entitled to worker's compensation benefits for injuries sustained during a lunch break, citing to *Marmolejo*, 92 Wis. 2d at 683. *Marmolejo* is not on point. In *Marmolejo*, the

---

[5] *See* *Lager*, 50 Wis. 2d at 661 ("It is clear, as a matter of law, that, in the event a salesman commences travel in the course of his employment and subsequently deviates from that employment but later resumes his route which he would have to follow in the pursuance of his employer's business, the deviation has ceased and he is performing services incidental to and growing out of his employment."); *Richardson v. Industrial Comm'n*, 1 Wis. 2d 393, 398, 84 N.W.2d 98 (1957) ("We do not say that the service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause…. If the work of the employee creates the necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own." (citation omitted)); *Hansen v. Industrial Comm'n*, 258 Wis. 623, 626-27, 46 N.W.2d 754 (1951) ("The provisions of the statute just referred to keep the salesman within the declared scope of employment while doing the usual, legitimate things incidental to daily existence. During the period of being at ease, upon leaving his last customer, he is not required to seek immediate seclusion in a hotel and remain away from human beings at the risk of being charged with deviating from his employment. Nor is he required to eat his evening meal at the restaurant nearest to the spot where he takes leave of his last customer on a particular day.").

[6] An internal e-mail between employees dated November 12, 2015, indicates that "[Brown] was driving from the Juneau plant to the West Bend plant at the time of the accident."

[7] Two days after the accident, Brown was interviewed by a case manager at the hospital, and he informed her that he was "traveling from one job site to another." Brown now claims no recollection of his conversation with the case manager and insists he was not headed to the West Bend plant. Brown argues that the statement is inadmissible hearsay; however, he does not brief this issue. Since, as the Plan explained, the circuit court did not rely on Brown's alleged statement to the case manager in making its decision, we will address the issue no further.

employee was an hourly employee with set hours, including a half hour lunch break that he was not compensated for. *Id.* at 676. Marmolejo's employment did not require him to leave the employer's premises at any time, and he could only perform his job assignment on the premises. *Id.* at 676, 682. Marmolejo was injured in an accident when he left the employer's premises to get lunch during his set lunch period. *Id.* at 676-77. *Marmolejo* did not involve WIS. STAT. § 102.03(1)(f).

¶18    In contrast, Brown was a salaried employee who was not required to punch a time clock or inform his employer of his comings and goings. There was no set lunch period, and the accident occurred during the hours of a typical workday. Although he testified that he had already worked for eight hours on the day of the accident, he also testified that Gardner Pet Group was a start-up company, and he often worked long hours. Brown was required to leave his employer's premises as part of his job performance and he was required to travel between the Juneau plant and his office in West Bend. Brown has not met his burden to rebut the presumption under WIS. STAT. § 102.03(1)(f).

¶19    There is no dispute that Brown had worker's compensation benefits "available" to him as Travelers determined his claim was compensable and began issuing him checks. It was only at Brown's direction that the claim file was closed and the checks stopped. Travelers never denied worker's compensation benefits, and Brown is not being forced to file a worker's compensation claim as the Plan explicitly provides: "This exclusion also applies whether or not you claim the benefits or compensation." The court properly granted summary judgment to the Plan.

11

¶20    Brown also argues that the circuit court's ruling must be reversed as there is "no precedent or authority to support the Plan's counterclaim" and that it is "a crafty maneuver to avoid Wisconsin's well-known 'made whole' rule of subrogation, a maneuver for which there is absolutely no authority." *See Rimes v. State Farm Mut. Auto. Ins. Co.*, 106 Wis. 2d 263, 271-72, 316 N.W.2d 348 (1982).  The Plan disagrees, arguing that its counterclaim is recognized under the plan language as well as *Employers Health Ins. Co. v. Tesmer*, 161 Wis. 2d 733, 469 N.W.2d 203 (Ct. App. 1991).

¶21    In *Tesmer*, James Tesmer was injured in a plane crash, and his worker's compensation carrier denied coverage.  *Id.* at 736.  Tesmer's health insurer sought to intervene in the worker's compensation proceedings.  *Id.*  The request to intervene was denied, and the insurer sought a declaratory judgment that WIS. STAT. § 102.30(7)(b), which precludes nonindustrial insurers from participating in worker's compensation proceedings, is unconstitutional.  *Tesmer*, 161 Wis. 2d at 736.  In upholding the constitutionality of the statute, this court explained that the insurer had the right to proceed against its insured for reimbursement, and as such, the law was constitutional.  *Id.* at 738-39; *see also Udelhofen v. John Hancock Mut. Life Ins. Co.*, 128 Wis. 2d 216, 220, 381 N.W.2d 579 (Ct. App. 1985).[8]  The circuit court properly granted summary judgment on the Plan's counterclaim.

---

[8] The Wisconsin Practice Series on Workers' Compensation Law also explains:

(continued)

¶22 Brown next argues the voluntary payment doctrine. According to Brown, the law does not require him to file a claim for worker's compensation, and he should not have to divest funds that the Plan voluntarily made to him. In ***MBS-Certified Public Accountants, LLC v. Wisconsin Bell, Inc.***, 2012 WI 15, ¶31, 338 Wis. 2d 647, 809 N.W.2d 857 (alteration in original; citation omitted), our supreme court "described the nature and purpose of the voluntary payment doctrine as follows: '[M]oney paid voluntarily, with knowledge of all the facts, and without fraud or duress, cannot be recovered merely on account of ignorance or mistake of the law.'" Brown argues that the Plan voluntarily submitted payments for Brown's medical care and "[n]ot once did the Plan challenge those payments before making them."

---

> Many employee claims for medical expenses will be paid by health insurers, even if the injuries are work-related and should be paid by the workers' compensation insurance carrier. In some instances, the health insurer pays because it does not realize the accident or disease was work-related, and in other cases, the claims will be paid by the health insurer because the workers' compensation carrier disputes that the injury was work-related (or the employer directs the employee to file the claim under the health insurance policy).
>
> In either case, the health insurer generally has the right to recoup the payments, because health insurance policies exclude payments of medical expenses covered by the workers' compensation carrier.
>
> ….
>
> Despite being unable to intervene in a workers' compensation proceeding directly, group health carriers can bring a separate claim in circuit court to recover payments against the employee through a contractual reimbursement clause in the group health policy.

17 Wis. Prac., Workers' Comp. Law § 20:5 (March 2019 Update) (citation omitted).

¶23 We agree with the Plan that the voluntary payment doctrine is inapplicable. First, Brown failed to cite any case law suggesting that the doctrine is applicable under the circumstances of this case where the plain language of a policy includes provisions for recovery of funds under certain circumstances. Further, the Plan relied on the questionnaire it sent Brown where he represented that the accident was not a work-related injury; thus, at the very least, the Plan paid Brown's medical claims without "knowledge of all the facts." Finally, the payments that the Plan is attempting to recover from Brown were not made directly to Brown; the payments were made to Brown's health care providers. *See Wegner v. West Bend Mut. Ins. Co.*, 2007 WI App 18, ¶23, 298 Wis. 2d 420, 728 N.W.2d 30 (2006).

¶24 Finally, Brown argues that the circuit court improperly awarded interest and costs to the Plan. Brown argues that the circuit court erred in awarding interest as Brown was required by the court to retain the funds in a trust account that could not bear interest, thereby making the award of interest "patently unfair, unjust, and erroneous." In *City of Merrill v. Wenzel Bros., Inc.*, 88 Wis. 2d 676, 697, 277 N.W.2d 799 (1979), our supreme court explained that "[p]rejudgment interest is awarded where the amount of damages is determinable, either because the damages are liquidated or because there is a reasonably certain standard of measurement."

¶25 Brown does not argue to this court that the amount of damages was not "determinable"; instead, he claims that Brown "did not at any point possess the disputed funds since they were held in trust pursuant to court order. Thus, [Brown was] completely unable to 'tender' any amount of damages to the Plan in order to avoid the accrual of interest." *See Beacon Bowl, Inc. v. Wisconsin Elec. Power Co.*, 176 Wis. 2d 740, 777, 501 N.W.2d 788 (1993). *Beacon Bowl* does not

14

preclude the result in this case; it merely explains the reasoning for the rule. Brown presents no case, and we could find none, where the fact that funds were held in a trust account precluded the award of prejudgment interest. We agree with the Plan that Brown could have taken certain actions to stop the accrual of interest, including tendering to the Plan the funds that were held in trust—with permission of the circuit court—or requesting that Travelers reimburse the Plan directly. Accordingly, we conclude that the circuit court did not err in awarding interest as the amount of damages was determinable.

¶26 Brown also challenges the court's award of costs to the Plan. Citing WIS. STAT. § 814.04, Brown objects to "certain items in the bill of costs, such as costs for travel [by the attorneys] to and from court proceedings and charges for attorney's fees, on the grounds that the costs statute does not allow for these types of costs." The bill of costs indicates that the Plan requested, and the court granted, $500 in attorney fees and $245.13 in mileage and toll fees, which we assume are the costs to which Brown objects. The Plan makes no argument as to whether the costs were properly awarded, except to say that they were.

¶27 WISCONSIN STAT. § 814.04(1)(a) addresses attorney fees and provides:

> (a) When the amount recovered or the value of the property involved is greater than the maximum amount specified in [WIS. STAT. §] 799.01(1)(d) [$10,000 or less], attorney fees shall be $500; when it is equal to or less than the maximum amount specified in [§] 799.01(1)(d), but is $1,000 or more, attorney fees shall be $300; when it is less than $1,000, attorney fees shall be $100. In all other cases in which there is no amount recovered or that do not involve property, attorney fees shall be $300.

Section 814.04(2) also allows for additional costs under certain circumstances:

> **(2)** DISBURSEMENTS. All the necessary disbursements and fees allowed by law; the compensation of referees; a

reasonable disbursement for the service of process or other papers in an action when the same are served by a person authorized by law other than an officer, but the item may not exceed the authorized sheriff's fee for the same service; amounts actually paid out for certified and other copies of papers and records in any public office; postage, photocopying, telephoning, electronic communications, facsimile transmissions, and express or overnight delivery; depositions including copies; plats and photographs, not exceeding $100 for each item; an expert witness fee not exceeding $300 for each expert who testifies, exclusive of the standard witness fee and mileage which shall also be taxed for each expert; and in actions relating to or affecting the title to lands, the cost of procuring an abstract of title to the lands. Guardian ad litem fees shall not be taxed as a cost or disbursement.

¶28 Brown's argument on the issue of the circuit court's award of $500 in attorney fees under WIS. STAT. § 814.04(1)(a) is conclusory and undeveloped, *see* **State v. Pettit**, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992); nevertheless, we see no concern with the $500 in attorney fees under the plain reading of § 814.04(1)(a) as the amount recovered in this case was well over the maximum amount specified in WIS. STAT. § 799.01(1)(d). On the issue of mileage for attorneys' travel to and from court hearings, however, we note that those costs are not specified under the statute (while mileage for expert witnesses is allowed). Our supreme court explained:

> The terms "allowable costs" or "taxable costs" have a special meaning in the context of litigation. The right to recover costs is not synonymous with the right to recover the expense of litigation. This right is statutory in nature, and to the extent that a statute does not authorize the recovery of specific costs, they are not recoverable.... Many expenses of litigation are not allowable or taxable costs even though they are costs of litigation.
>
> Thus, any award of a "cost" which is not specifically authorized by a Wisconsin statute constitutes an error of law that must be reversed.

**Kleinke v. Farmers Coop. Supply & Shipping**, 202 Wis. 2d 138, 147, 549 N.W.2d 714 (1996) (citation omitted); *see also* **State v. Foster**, 100 Wis. 2d 103, 106, 301

16

N.W.2d 192 (1981). The supreme court rejected this court's statutory interpretation in **Zintek v. Perchik**, 163 Wis. 2d 439, 476-77, 471 N.W.2d 522 (Ct. App. 1991), where we considered § 814.04(2) with WIS. STAT. § 814.036 (the omnibus costs provision), concluding that when read together the statutes grant the circuit court nearly absolute discretion as to what costs may be taxed against a party. **Kleinke**, 202 Wis. 2d at 149. The court in **Kleinke** concluded instead that

> [t]he omnibus costs provision simply grants a trial court the discretion to allow costs even "if a situation arises in which the allowance of costs is not covered by [WIS. STAT. §§] 814.01 to 814.035." The omnibus costs provision, therefore, only gives the court discretion as to *when* it may allow costs, not as to *what* costs may be allowed. *Neither the omnibus cost provision nor the catch-all provision in [§] 814.02 grants the trial court the power to allow costs which are not explicitly authorized by statute.*

**Kleinke**, 202 Wis. 2d at 149 (third emphasis added; citations omitted). As § 814.04(2) does not explicitly allow disbursements for mileage for travel to and from court proceedings by attorneys and the Plan presents no additional statutory or legal support for the award of costs under these circumstances,[9] we conclude that the circuit court erroneously taxed costs of $245.13 in mileage and toll fees against Brown. On remand, we instruct the circuit court to remove the $245.13 for mileage and toll fees from the money judgment.

---

[9] *Cf.* **Zurich Am. Ins. Co. v. Wisconsin Physicians Servs. Ins. Corp.**, 2007 WI App 259, ¶¶42-43, 306 Wis. 2d 617, 743 N.W.2d 710 (narrowly construing cost statute by upholding circuit court finding that "photocopying" in statute does not include creating an electronic image of a document); *but see* **Allied Processors, Inc. v. Western Nat'l Mut. Ins. Co.**, 2001 WI App 129, ¶53, 246 Wis. 2d 579, 629 N.W.2d 329 ("We therefore conclude that a prevailing plaintiff in a bad faith action may recover as compensatory damages all reasonable expenses incurred in litigating the bad faith claim. Because Western National does not argue that the expenses for API's expert witnesses and for its attorney's travel and lodging were not reasonable, we conclude the trial court erred in not allowing these expenses as a component of API's compensatory damages.").

¶29    For the reasons stated, we affirm in part and reverse in part with directions on remand.

*By the Court.*—Judgment and order affirmed in part; reversed in part and cause remanded with directions.

Not recommended for publication in the official reports.